IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY BABILYA, ) | |
| ) | Civil Action No. 08-1228 |
| Plaintiff, ) | |
| ) | Magistrate Judge Lenihan |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | Doc. Nos. 10 & 12 |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

LENIHAN, Magistrate Judge

Acting pursuant to 42 U.S.C. § 405(g), Gary Babilya ("Babilya" or "Plaintiff") appeals from a February 15, 2007 decision of the Commissioner denying his application for disability insurance ("DIB") and supplemental security income ("SSI"). Cross Motions for Summary Judgment are presently before the Court. The Motion filed by Plaintiff at Doc. No. 10 will be denied, and the Motion filed by the Commissioner at Doc. No. 12 will be granted.

Procedural Background

On October 6, 2005, the Plaintiff filed his application for DIB and SSI, alleging that he has been disabled since April 1, 2003. (Tr. 36, 47) He described the conditions precluding his ability to engage in substantial gainful activity as drug and alcohol abuse and possible mental disorders. (Tr. 57) Following an initial denial of benefits on May 9, 2006 (Tr. 36), Plaintiff requested a hearing. (Tr. 37)

The hearing on Plaintiff's application took place on December 7, 2006, before

administrative law judge ("ALJ") Patricia C. Henry, in Latrobe, Pennsylvania.  (Tr. 376-416) Plaintiff, who was represented by counsel, testified, along with an impartial vocational expert. Plaintiff's mother, Joan Babilya also testified.  (Tr. 376)  At the time of the hearing, Plaintiff was a 46 year-old divorced high school graduate.  (Tr. 380-81)

Plaintiff testified that he lives in one room of his parents' hotel which is connected to a trailer where his parents live.  (Tr. 381) His mother does his laundry and makes his dinners.  (Tr. 381) His drivers license was suspended due to a DUI violation.  (Tr. 382) Since alleging disability in April 2003, Plaintiff has worked sanding and delivering kitchen cabinets, and as an assembly line worker.  (Tr. 384-85) Plaintiff testified that he has not drunk alcohol for one and one half to two years.  (Tr. 385) He indicated that he has been going to drug and alcohol outpatient treatment three times a week for one year.  (Tr. 385-86) He testified that as part of the program, he is urine tested frequently.  (Tr. 386) Plaintiff's medications at the time of the hearing included Zyprexa for depression, Depakote, Effexor, Trazodone, and Oxycodone.  (Tr. 389) He believes that some or all of these medications cause him to sleep all the time; he has never been an inpatient in a psychiatric hospital.  (Tr. 389) Other than going to drug and alcohol rehabilitation three times a week, Plaintiff testified that he does nothing but lie around and sleep all day.  (Tr. 390) Plaintiff indicated that he has no friends and does not socialize, other than talk with men who also have rooms in his parents' hotel.  (Tr. 390) He complained that his knee is still numb from an August 20, 2006 automobile accident, his elbows hurt, and he cannot straighten his back.  (Tr. 392) Plaintiff testified that even with medication, he still suffers from mood swings and has a short temper.  (Tr. 393) His mother has to remind him to take showers and to shave.  (Tr.393) He does no grocery shopping.  Plaintiff testified that he can lift nothing

and that all his doctors have indicated that he cannot work.  (Tr. 395) He stopped physical therapy because his insurance would no longer cover it.  He indicated that even with hydrocodone, his lower back and neck still hurt.  (Tr. 396) He testified that he limps as a result of breaking his toe in the August 20, 2006 car accident.  (Tr. 396-97) Even though he sleeps all day, he does not feel rested.  He receives laser therapy on his back as a result of the car accident.

Plaintiff's mother testified that she does Plaintiff's laundry, cooking, and shares the responsibility of taking him to his doctors' appointments with her husband.  (Tr. 401-02) Plaintiff's father does the grocery shopping.  (Tr. 402) She tells Plaintiff when to shower and shave.  She indicated that when he gets a job, he loses it in a few weeks.  He lost a job for falling asleep while working.  She testified that his eating habits are inconsistent and that he has a bad temper.  (Tr. 403) As to Plaintiff's sleeping habits, she testified that he will sleep 12 or 14 hours a day, and sometimes he does not get out of bed and she will go and check on him to be sure he is alright.  (Tr. 404) She testified that she believes Plaintiff is not using drugs or alcohol since he has been attending outpatient classes three days per week.

    Standard of Review

The standard of judicial review is whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401; Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552 (1988)); Smith, 637 F.2d at 970; Dobrowolsky v. Califano, 606 F.2d

403, 406 (3d Cir. 1979). "Substantial evidence" is more than a "scintilla." <u>Jesurum v. Secretary of United States Dep't of Health and Human Servs.</u>, 48 F.3d 114, 117 (3d Cir. 1995); <u>Stunkard v. Secretary of Health and Human Servs.</u>, 841 F.2d 57, 59 (3d Cir. 1988); <u>Smith</u>, 637 F.2d at 970. If supported by substantial evidence, the Commissioner's decision must be affirmed.

  The Supreme Court has described a five-part test established by the Commissioner to determine whether a person is disabled: The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. <u>See</u> 20 C.F.R. §§ 416.920(a) through (c) (1989). In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. <u>See</u> 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A) (1989). If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. § 416.920(d). If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits. §§ 416.920(e) and (f). <u>Sullivan v. Zebley</u>, 493 U.S. 521, 525-26 (1990). <u>Accord</u> <u>Barnhart v. Thomas</u>, 124 S. Ct. 376, 379-80 (2003). The initial burden rests with Plaintiff to demonstrate that he is unable to engage in his past work. <u>Stunkard</u>, 841 F.2d at 59; <u>Cotter v. Harris</u>, 642 F.2d 700 (3d Cir. 1981); <u>Dobrowolsky</u>, 606 F.2d at 406; <u>Rossi v. Califano</u>, 602 F.2d 55, 57 (3d Cir. 1979). The burden then shifts to the Commissioner to show that other work exists in the national economy that he could perform. <u>Green v. Schweiker</u>, 749 F.2d 1066, 1071 (3d Cir. 1984). The fifth step is

divided into two parts:

> First, the [Commissioner] must assess each claimant's present job qualifications. The regulations direct the [Commissioner] to consider the factors Congress has identified as relevant: physical ability, age, education, and work experience. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f) (1982). Second, [he] must consider whether jobs exist in the national economy that a person having the claimant's qualifications could perform. 20 C.F.R. §§ 404.1520(f), 404.1566-404.1569 (1982).

Heckler v. Campbell, 461 U.S. 458, 460-61 (1983) (footnotes omitted).

### The ALJ's Decision

The ALJ found that Plaintiff had a number of severe impairments, including sleep apnea, degenerative disc disease, bipolar disorder, and polysubstance abuse, anxiety disorder and personality disorder. (Tr. 19) When Plaintiff uses drugs and alcohol, the ALJ found that Plaintiff's bipolar disorder meets Listing 12.04 Affective Disorder, his Anxiety disorder meets Listing 12.06, his Personality disorder meets listing 12.08, and his Substance Abuse Disorder meets Listing 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix1 (20 C.F.R. 416.920(d)). (Tr.19) In the absence of polysubstance abuse, the ALJ found that the Plaintiff's anxiety and bipolar/depressive disorder would continue to cause more than a minimal impact on his ability to perform basic work activities, and therefore, would continue to be severe. (Tr. 23) The ALJ also noted that there was "no evidence to show that he would have a personality disorder exhibiting aggressiveness or hostility absent his drug and alcohol use." (Tr. 23) The ALJ then found that absent polysubstance abuse, Plaintiff's anxiety and depressive disorders would not meet Listing 12.04 Affective Disorder, and Listing 12.06 Anxiety Disorder of 20 C.F.R. Part 404, Subpart P, Appendix1 (20 C.F.R. 416.920(d)). Thereafter, the ALJ found that Plaintiff has:

> the residual functional capacity to engage in light work . . ., that avoids balancing,

>stooping, kneeling, crouching, crawling or climbing of ladders, ropes, scaffolds, ramps or stairs; is limited to no more than simple, routine, repetitive tasks, not performed in a fast paced production environment; involves only simple, work related decisions; relatively few work place changes and no more than occasional interaction with supervisors, coworkers or the public.

(Tr. 24) The ALJ further found that Plaintiff is unable to perform any past relevant work (Tr. 26). Finally, relying on the testimony of the vocational expert, the ALJ concluded that considering Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (Tr. 27)

Having carefully reviewed the entire record, the undersigned concludes that the ALJ's decision was neither erroneous nor unsupported by substantial evidence. Accordingly, the Court will limit its discussion to the points of error alleged by Plaintiff.

Analysis

1.  The ALJ Properly Assessed Plaintiff's Statements concerning the Intensity, Persistence, and Limiting Effects of his Symptoms pursuant to 20 C.F.R. § 404.1529, 416.929, and SSR 96-7p.

First, Plaintiff contends that "the ALJ did not properly evaluate plaintiff's subjective complaints and she did not provide sufficient rationale in accordance with the disability regulations pertaining to the evaluation of symptoms." (Doc. No. 11 at 9-16)

The ALJ's finding that "the testimony concerning [Plaintiff's] impairments and their impact on his ability to work [is] only partially credible in light of his description of his daily activities and life style, the objective medical evidence of record and treating medical opinions regarding the severity of the [Plaintiff's] condition and functional limitations" is supported by

substantial evidence. (Tr. 25.) The ALJ followed the two step process described in SSR 96-7p. First, an ALJ must consider whether there is an underlying medically determinable physical or mental impairment; that is, one that can be shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the Plaintiff's pain and other symptoms. Thereafter, the ALJ must evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine whether they limit Plaintiff's ability to do basic work activities. When a plaintiff's statements as to the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by the objective record medical evidence, the ALJ must make a finding on credibility based on the entire case record. The ALJ must consider the entire case record including medical signs and laboratory findings, Plaintiff's own statements about his symptoms, statements and other information provided by treating or examining physicians, and other persons about Plaintiff's symptoms and how they affect him, and "any other relevant evidence in the case record." See SSR 96-7p. 20 C.F.R. 404.1529(c) and 416.929(c) describe the kinds of evidence that an ALJ must consider in addition to the objective medical evidence when evaluating the credibility of Plaintiff's statements:

    1. Plaintiff's daily activities;

    2. The location, duration, frequency, and intensity of Plaintiff's pain or other symptoms;

    3. Factors that aggravate or precipitate Plaintiff's symptoms;

    4. The type, dosage, effectiveness, and side effects of medication Plaintiff takes or has taken for pain or other symptoms;

    5. Treatment, other than medication, Plaintiff receives or has received for relief of his

symptoms, including pain;

6. Any measures other than treatment the Plaintiff uses or has used to relieve his symptoms, including pain; and

7. Other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms.

Here, the ALJ reviewed Plaintiff's testimony at the hearing in conjunction with record evidence, and concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms. (Tr. 24-25) She noted that his obstructive sleep apnea was confirmed by a polysomnography test in June 2006 and that he uses a continuous positive airway pressure (CPAP) machine. The ALJ indicated that Plaintiff was diagnosed with bipolar disorder. She also indicated that Plaintiff has a history of drug and alcohol abuse and that he has recently received treatment three days per week in a partial hospitalization program as well as monthly therapy.

In finding that his complaints of pain and other symptoms were only partially credible, however, the ALJ engaged in an exhaustive analysis focused on the seven factors above, along with record medical evidence. She indicated that a May 2005 examination concerning Plaintiff's complaints of generalized weakness and swollen feet included treatment notes suggesting that his symptoms may be the result of poor nutrition. As to his credibility in general, she noted that Plaintiff is "seriously addicted to drugs and alcohol," and that "[h]e was a suspect in a home break in as recently as September 2005." (Tr. 25) She also noted the medical records that reflected an overdose in November 2005. She considered the January 2006 pulmonary function test performed because of his complaints of progressive sleepiness, and commented upon the

report notes which indicated that Plaintiff's fatigue may be the result of his erratic sleep schedule or side effects of medication. She also noted that according to record medical evidence, Plaintiff has achieved significant improvement in his sleep with the use of the CPAP machine. Next, the ALJ considered the x-rays taken in October 20, 2006 of Plaintiff's cervical spine and the report prepared by Dr. Joddi Neff indicating a mild amount of degenerative changes of the cervical spine. The ALJ then referenced the fact that Plaintiff was able to load and unload cabinets at a job in 2004, and restricted him to light work with occasional postural maneuvers. As to his mental impairments, the ALJ discussed Dr. Last's October 2006 comprehensive assessment which indicated that Plaintiff was moderately impaired in many areas of functioning, but not significantly impaired when it came to performing simple, routine, repetitive tasks. Dr. Last noticed an improvement in Plaintiff's ability to function at this time while Plaintiff was undergoing treatment for his addictions, and where a blood test revealed no drugs or alcohol in his system. The ALJ concluded that this second assessment performed by Dr. Last supports her conclusion that absent drug and alcohol abuse, Plaintiff "is able to sustain unskilled work." (Tr. 25) The ALJ noted Plaintiff's long history of substance abuse and many relapses. She emphasized that he admits that he is capable of doing more than he does, but that his parents do not require him to assume any responsibilities. (Tr. 26)

  Plaintiff also argues that according to SSR 96-7p, "consistency is a strong indication of the credibility of an individual's statements" and that Plaintiff's mother's testimony was consistent with Plaintiff's. (Doc. No. 11 at 12-13) Although the Court recognizes that SSR 96-7p provides that consistency is a strong indication of credibility, it is only one indication. Further, it is not only the internal consistency of an individual's statements or consistency with

another family member's statements, but also the consistency between the individual's statements with other information in the case record. See SSR 96-7p. For instance, the ALJ must consider the degree to which Plaintiff's statements are consistent with medical signs and laboratory findings, and the consistency of Plaintiff's statements with other information in the case record including reports. SSR 96-7p.

A longitudinal view of the record medical evidence in conjunction with the seven factors listed above, reveals medical signs and laboratory findings, as well as reports and observations by other persons, that provide substantial record evidence to support the ALJ's finding on Plaintiff's credibility.

2.     The ALJ properly applied Public Law 104-121

Next, Plaintiff argues that he has consistently maintained that "alcoholism or drug addiction is not a contributing factor material to the determination of whether plaintiff is disabled."[1] (Doc. No. 11 at 16) Here, the ALJ's determination that drug and alcohol abuse is a

---

[1]Immediately after making this assertion, Plaintiff then appears to argue in the alternative that the ALJ should not have applied Public Law 104-121 at all because he is not currently abusing drugs and alcohol. (Doc. No. 11 at 16-17) Plaintiff's argument is nonsensical in light of the applicable regulations, and the fact that he is claiming disability since April 1, 2003. 20 C.F.R. §§ 404.1535; 416.935 provide in part:

**§§ 404.1535; 416.935 How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.**
(a) *General.* If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of you age or blindness.
(b) *Process we will follow when we have medical evidence of your drug addiction or alcoholism.* (1) The key factor we will examine in determining whether drug

contributing factor material to his disability is supported by substantial record evidence.

According to Public Law 104-121, an individual is not entitled to disability benefits if alcoholism or drug addiction is "a contributing factor material to the determination that the individual is disabled." 42 U.S.C. §§ 423 (d)(2)(C); 1382c (a)(3)(J). The Commissioner has issued regulations governing the implementation of Public Law 104-121. First, an ALJ must determine whether a claimant would be disabled even with the limitations caused by alcoholism or drug addiction. 20 C.F.R. §§ 404.1520; 416.920. Next, if the claimant is found to be disabled from all impairments, including the addiction, then the ALJ must determine the claimant's limitations in the absence of the addiction. 20 C.F.R. §§ 404.1535 (b)(2); 416.935 (b)(2). If the remaining limitations are not disabling, then the claimant's addiction is a contributing factor material to the determination of disability. Id. The "ALJ must identify at least some medical evidence supporting the conclusion that a claimant no longer would be disabled if he or she stopped drinking or taking drugs." Sklenar v. Barnhart, 195 F. Supp.2d 696, 700 (W.D. Pa. 2002) (emphasis in original)(citing Doughty v Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001); Nevis v. Apfel, 2000 WL 342665, *10 (N.D. Cal. 2000); Davis v. Apfel, 1999 WL 972007, *4 (E.D. Pa. 1999)); see e.g., Reed v. Barnhart, 2008 WL 2835331 (D.N.J. 2008) (decision of Commissioner affirmed where ALJ referred to medical evidence in finding Plaintiff's mental impairments would be less severe absent drug abuse).

Here, the ALJ conducted an exhaustive analysis in accordance with the applicable

---

addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
20 C.F.R. §§ 404.1535(a)(b); 416.935(a)(b) (emphasis added).

regulations. Her conclusion that Plaintiff's drug and alcohol dependency is a contributing factor material to the determination of disability is supported by substantial record evidence.

       3.      <u>Substantial evidence supports the weight that the ALJ gave to the reports of Dr. Last</u>

Plaintiff argues that because Dr. Last was a treating medical source, his reports and opinions must be given controlling weight, directing the Court to Dr. Last's statements concerning "the severe restrictions on plaintiff's ability to perform work-related activities." (Doc. No. 11 at 20) As noted by Defendant, Plaintiff's argument fails to recognize that even though treating medical sources are afforded controlling weight pursuant to SSR 96-2p, SSR 96-5p specifically provides treating source opinions on issues concerning whether claimants are unable to work are never entitled to controlling weight:

> [T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled . . ..

SSR 96-5p. Moreover, as also pointed out by Defendant and ignored by Plaintiff, the ALJ did afford Dr. Last's opinions controlling weight where appropriate; that is, where they were "well supported" by "medically acceptable" clinical and laboratory diagnostic techniques, and "not inconsistent" with other "substantial evidence" in Plaintiff's case record. SSR 96-2. <u>See</u> Tr. 20-21 (alcohol worsens Plaintiff's mood disorder); Tr. 25 (Plaintiff's ability to function improved when not using drugs or alcohol).

Clearly, the ALJ's decision is supported by substantial evidence as it relates to the weight afforded to Dr. Last's opinions in the case record.

    4.    <u>The ALJ's analysis at step three of the five-step sequential analysis</u>

Plaintiff's fourth contention of error is predicated on his previous arguments that the "ALJ's adverse credibility determination, her flawed 'materiality' analysis and her improper rejection and/or evaluation of probative medical evidence precludes . . . meaningful review." (Doc. No. 11 at 20-21) As to Listings 12.04 (Affective disorders), and/or 12.06 (Anxiety -related disorder) and/or 12.08 (Personality disorder), Plaintiff contends that he meets the "B" requirements, relying on Dr. Last's report at Tr. 247-250. Plaintiff fails to note that this report reflects Plaintiff's condition is worsened by his alcohol use (Tr 253), in contrast to his report at Tr. 324-329, where Plaintiff's polysubstance abuse and dependency were reportedly in remission, (Tr. 327). The former report shows some marked limitations at the B criteria, while the later reflects none.

Next, Plaintiff contends that as to Listing 1.04 (Disorders of the spine), the ALJ failed to specifically address this Listing in her analysis. The ALJ identified degenerative disc disease as a medically determinable "severe impairment" at Step 2 of the five-step sequential analysis. (Tr. 19) Thereafter, the ALJ did not specifically address Listing 1.04 at Step 3; however, her analysis addressed record evidence concerning Plaintiff's back in general and with particular specificity as follows:

> 1. Plaintiff worked loading and unloading cabinets for two months in 2004 and he also worked for two weeks during 2005. He was terminated due to sleeping on

the job rather than a physical inability to perform the work. (Tr. 19)

2. On September 1, 2005, claimant was treated for injuries sustained in a roll over motor vehicle accident. X-rays of the thorax, abdomen, pelvis, brain were normal and x-rays of the cervical spine showed no significant abnormality. (Tr. 20)

3. X-rays taken on October 20, 2006 of his cervical spine revealed small disc osteophyte complexes with some facet degenerative changes as well. Moderate bilateral exit foraminal stenosis at C5-6 and C6-7 is evident. X-rays of the lumbar spine reveal mild diffuse bulging disc annulus at L4-5 and L5-S1 with no definite focal disc herniation. Dr. Joddi Neff reviewed the x-rays and reported mild amount of degenerative disc changes of the cervical spine. Nevertheless, claimant was able to load and unload cabinets at a job in 2004. Thus, claimant is restricted to light work with occasional postural maneuvers. (Tr. 25)

4. Although he is clearly not very active during the day, he lives with his parents who provide for his needs and do not require him to assume any responsibilities. The claimant admits that he is capable of doing more than he does. (Tr. 26)

5. The Administrative Law Judge finds that the claimant retains the ability to perform a range of light exertion. Exertional and postural limitations are imposed due his fatigue and deconditioning. (Tr.26)

Clearly, the ALJ considered the objective medical record evidence of Plaintiff's back pain in conjunction with his subjective complaints. Further, the record evidence also reflects that Plaintiff received no prescription medication for back pain; he indicated that he took only over-the-counter Motrin, Aleve, Tylenol and Advil. (Tr. 90) Record evidence also reflects that on August 20, 2006, x-rays of Plaintiff's cervical spine revealed no abnormalities, and only a moderate amount of degenerative changes. (Tr. 314) Plaintiff also indicated that he could walk for about one half hour at a time. (Tr. 90) Plaintiff did not indicate back pain as a condition that limited his ability to work, but only drug and alcohol abuse and possible mental disorders. (Tr. 57)

Even though the ALJ failed to specifically analyze Plaintiff's back pain under Listing 1.04, a remand on this issue would clearly not lead to a different result. Consequently, the Court

will not remand this case on this issue alone.  Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (refusing to remand where stricter compliance with a Social Security ruling would not have changed the outcome of the case); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

> 5.  The ALJ's RFC analysis is supported by substantial evidence and the hypothetical questions to the VE did reflect the specific capacity/limitations established by the entire record.

Finally, Plaintiff argues that the ALJ "failed to provide sufficient rationale in support of her assessed limitations."  (Doc. No. 11 at 24) Specifically, Plaintiff contends that as a result of his sleep apnea, he becomes very fatigued, has difficulty concentrating, and naps all day. Plaintiff's assertions, however, conflict with the medical records that reflect that as of April 4, 2006, Plaintiff started to notice an improvement (Tr. 286), and that by June 29, 2006, Plaintiff achieved "significant resolution of respiratory disturbances" and quality and quantity of sleep had improved with the use of the CPAP machine.  (Tr. 279)

Plaintiff directs the Court to Dr. Kreinbrook's report at Tr. 254-58 in support of his contention that the ALJ did not properly evaluate his residual functional capacity.  Yet at Tr. 259, Dr. Kreinbrook completed a residual functional capacity assessment, indicating that Plaintiff was not then abusing drugs or alcohol, and found Plaintiff to have neither marked nor extreme limitations in any category.  (Tr. 259-60) Consequently, Dr. Kreinbrook's report supports the ALJ's residual functional capacity analysis.

Plaintiff next directs the Court to Dr. Last's assessment at Tr. 247-253.  This assessment

by Dr. Last, however, reflects certain marked limitations when Plaintiff was still using alcohol. See Tr. 253. Yet, Dr. Last's assessment at Tr. 324-329, where Plaintiff's polysubstance abuse and dependency were reportedly in remission, (Tr. 327), reflects no marked or extreme limitations.

Therefore, Plaintiff's contention that the ALJ's residual functional capacity analysis is flawed must necessarily fail.

Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment at Doc. No. 10 is denied, and Defendant's Motion for Summary Judgment at Doc. No. 12 is granted. An appropriate order follows.

Dated: September 30, 2009    _____
                             Lisa Pupo Lenihan
                             United States Magistrate Judge

cc: All counsel of record
    Via electronic filing